IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE AT MEMPHIS

TJM 64, INC.,
T.J. MULLIGANS, INC.,
RAB MEMPHIS, LLC,
HADLEY'S PUB, INC.,
TAVERN 018, INC.,
BREWSKIS SPORTS BAR AND GRILLE, LLC,
MURPHY'S PUBLIC HOUSE, INC., and
CANVAS OF MEMPHIIS, LLC,

       Plaintiffs,

v.                                                                                                       NO.

SHELBY COUNTY MAYOR, LEE HARRIS;
SHELBY COUNTY HEALTH DEPARTMENT
DIRECTOR, ALISA HAUSHALTER;
SHELBY COUNTY HEALTH OFFICER,
BRUCE RANDOLPH;

       Defendants.

**COMPLAINT FOR DAMAGES**

COMES NOW, the above-named Plaintiffs (collectively "Plaintiffs"), by and through their attorney of record, Randall N. Songstad, and would state to the Court as follows:

## I.     The Parties

1.     Plaintiff TJM 64, Inc. is a domestic corporation organized in Shelby County. Its principal place of business is located at 2821 Houston Levee Road, Cordova, Tennessee 38016.

2.     Plaintiff T.J. Mulligans, Inc. is a domestic corporation organized in Shelby County. Its principal place of business is located at 8071 Trinity Road, Suite 1, Cordova, Tennessee 38018

3. Plaintiff RAB Memphis, LLC is a domestic corporation organized in Shelby County. Its principal place of business is located at 1817 Kirby Parkway, Germantown, Tennessee 38138.

4. Plaintiff Hadley's Pub, Inc. is a domestic corporation organized in Shelby County. Its principal place of business is located at 2779 Whitten Road, Memphis, Tennessee 38138.

5. Plaintiff Tavern 018, Inc. is a domestic corporation organized in Shelby County. Its principal place of business is located at 8130 Macon Station, Suite 106, Cordova, Tennessee 38018.

6. Plaintiff Brewskis Sports Bar and Grille, LLC is a domestic limited liability corporation organized in Shelby County. Its principal place of business is located at 2244 Whitten Road, Memphis, Tennessee 38133.

7. Plaintiff Murphy's Public House, Inc. is a domestic corporation organized in Shelby County. Its principal place of business is located at 1589 Madison Ave., Memphis, Tennessee 38104.

8. Plaintiff Canvas of Memphis LLC is a domestic limited liability corporation organized in Shelby County. Its principal place of business is located at 1737 Madison Ave., Memphis, Tennessee 38104.

9. Defendant Mayor Lee Harris is being sued in his official capacity as Shelby County Mayor. Mayor Lee Harris can be served through Shelby County Attorney Marlinee Clark Iverson at 160 N. Main St., Ste. 950, Memphis, TN 38103.

10. Defendant Director Alisa Haushalter is being sued in her official capacity as Shelby County Health Department Director. Alisa Haushalter can be served through Shelby County Attorney Marlinee Clark Iverson at 160 N. Main St., Ste. 950, Memphis, TN 38103.

11. Defendant Officer Bruce Randolph is being sued in his official capacity as Shelby County Health Officer. Bruce Randolph can be served through Shelby County Attorney Marlinee Clark Iverson at 160 N. Main St., Ste. 950, Memphis, TN 38103.

## II. Jurisdiction and Venue

12. This Court has jurisdiction to hear this case under 28 U.S.C. §§ 1331, 1343(a)(3)-(4), which confers original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges under the United States Constitution.

13. This action seeks relief under 42 U.S.C. §§ 1983 and 1988, and the Fifth and Fourteenth Amendments. U.S. CONST. AMEND. V, XIV; see also Fed. R. Civ. P. 23.

14. Venue is proper under 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to Plaintiffs' claim occurred in this district.

## III. Statement of Facts

15. On July 8, 2020, the Shelby County Health Department issued an Order requiring the closure of forty-five (45) "Bars/Limited Service Restaurants and Clubs." (Exhibit A).

16. According to the Order, the Department of Health stated that "When determining whether a specific Service or Business should reopen, the Department considers two main factors: the risk of COVID-19 spread when conducting said business activity in light of the latest science and research about the spread of COVID-19, and the prevalence of the disease in our community." (Id.)

17. According to the Order, The Department of Health stated: "All businesses and services in Shelby County may open for business with the following exceptions:

    1) Bars/Limited Service Restaurants and Clubs

    2) Adult Entertainment venues; and

   3) Schools.

   4) Festivals, fairs, parades, large scale sporting events, and large-scale community events." (Id.).

18. Pursuant to the regulations governing Limited Service Restaurant Licensure, a facility holding such a license must not have total gross receipts of prepared food in excess of 50% of their overall sales. (Id.)

19. On July 9, 2020 many, if not all, of the bars and limited service restaurants and clubs, including the Plaintiffs, either voluntarily shut down their business operations or were forced to shut down by representatives at the direction of the Tennessee Alcohol and Beverage Commission.

20. All of the named Plaintiffs are small business owners, and all have been singled out by Shelby County and the Shelby County Health Department.

21. Restaurants, Theaters, large public gathering facilities such as Graceland and Beale Street (generally) were not affected by the Closure Order. Remarkably, bars, pubs, and taverns in and around Beale Street, regardless of their ratio of food to liquor sales, are exempt from the Order. Ironically, the heavily trafficked "tourist" areas of Memphis and Shelby County were untouched by this Closure Order. These areas are traversed by citizens of foreign states and foreign countries. If Shelby County Health Department is concerned about the spread of Covid-19 among its citizenry, why are they only closing small "mom and pop" local bars and restaurants?

22. The July 8, 2020 Order is an "Indefinite Closure" of the Plaintiff's businesses as the Health Department has not given a deadline for the shut-down to end.

23.     The July 8, 2020 Order is a governmental "taking" of personal and real property in violation of the Fifth Amendment of the United States Constitution.

24.     The July 8, 2020 Order deprives the Plaintiffs of Life, Liberty and/or Property without Due Process of Law in Violation of the Fourteenth Amendment of the United States Constitution.

25.     The July 8, 2020 Order is an arbitrary and capricious action by the government, which is a denial of fundamental procedural fairness.

26.     The Plaintiffs in this action have lost their ability to function as a restaurant/bar and have had their rights under the Constitution trampled upon causing a loss of property, which has been "taken" by the Shelby County Government.

### IV.     Causes of Action

### I.  VIOLATION OF THE TAKINGS CLAUSE - 42 U.S.C. § 1983

The COVID-19 Closure Order is an Unconstitutional Regulatory Taking of the Plaintiff's Property Without Just Compensation in Violation of the Fifth Amendment's Takings Clause as Incorporated Under the Fourteenth Amendment

27.     Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

28.     The Takings Clause of the Fifth Amendment provides that private property shall not "…be taken for public use, without just compensation."  U.S. CONST. AMEND. V.

29.     The Takings Clause "…is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536-37 (2005)

(quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (emphasis in original)).

30. The Takings Clause bars government actors "…from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

31. The Shelby County Health Department, in accordance with the advice of Dr. Bruce Randolph, issued the COVID-19 Closure Order as a means of slowing the spread of the novel coronavirus. This Order is so incredibly onerous, capricious, arbitrary and frankly hypocritical that it defies any form of logic. The decision seems to be based upon some fact that COVID-19 can only be spread in small local bars and restaurants but never in the highly trafficked areas in and around Beale Street and Graceland.

32. The COVID-19 Closure Order adversely impacts the Plaintiffs use of their Tangible Property and Physical Locations to such an extent that, at least temporarily, the Order entirely diminishes the economically beneficial use of those Properties.

33. The COVID-19 Closure Order prohibits *all* economically beneficial and profitable uses of the Plaintiff's Tangible Property and Physical Location. The entirety of the Plaintiff's property rights have been extinguished.

34. The Plaintiffs are not permitted to use their Tangible Property or Physical Locations in any fashion to run their businesses, but rather have been totally shut down by the Health Department's arbitrary and capricious Order. The purpose of the COVID-19 Closure Order was supposed to be a protective measure for the people of Shelby County. However, the Health Department has indiscriminately chosen a small group of restaurant/bar owners whose businesses are predominately outside the curtilage of Memphis and Shelby County tourism

centers. The COVID-19 Closure Order has been issued without any consideration of the heavily trafficked tourism areas of Shelby County. If there is protective purpose behind this Order, it seems to have been side-stepped in favor of the City and County's need to protect the tourism dollars.

35. The Supreme Court "…recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster-and that such 'regulatory takings' may be compensable under the Fifth Amendment." *Lingle*, 544 U.S. at 537.

36. "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415-416 (1922).

37. The COVID-19 Closure Order "goes too far." Shelby County Health Department's actions must be recognized as a "Taking" without just compensation and therefore violates the 5th Amendment of the Constitution. Without just compensation, which is guaranteed by the Takings Clause, the Plaintiffs will be privately carrying the burden of the cost of paying for government action undertaken for the common good.

38. The Plaintiffs have suffered a complete loss of "all economically beneficial uses" of their Property while the COVID-19 Closure Orders remain in effect. This complete loss constitutes a categorical taking, whether it is the Plaintiffs inability to operate their businesses at their Physical Locations or their inability to exercise any of their other property rights with regard to their Tangible Property. See *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019 (1992).

39. The Plaintiffs "have been called upon to sacrifice all economically beneficial uses [for their Properties] in the name of the common good, that is to leave [their] properties economically idle and they have suffered a taking." Lucas, 5050 U.S. at 1019. This sacrifice is not being exerted upon the rest and remainder of the Shelby County restaurant scene nor is the application of this Order evenly executed for its stated purpose. In fact, the highest trafficked areas in Shelby County are not subject to the Order. There is absolutely NO equal application of this onerous Order.

40. In the alternative, under the framework articulated by the Supreme Court in Penn Central, the COVID-19 Closure Orders constitute a taking based upon "the magnitude of [the Orders] economic impact and the degree to which [the Orders] interfere with legitimate property interests." *Lingle*, 544 U.S. 528 at 540.

41. The Supreme Court's analysis in Penn Central sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

> On the other hand, if the regulation "fall[s] short of eliminating all economically beneficial use, a taking nonetheless may have occurred," *Palazzolo* [*v. Rhode Island*], 533 U.S. [606] at 617, 121 S.Ct 2448[, 150 L.Ed.2d 592 (2001)], and **the court looks to three factors to guide its inquiry: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action,"** *Penn Cent*., 438 U.S. at 124, 98 S. Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing

> of all the relevant circumstances." *Palazzolo*, 533 U.S. at 634, 121 S.Ct. 2448 (O'Connor, J., concurring); *see also Tahoe-Sierra*, 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); *Yee v. City of Escondido*, 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory taking claims "entail[] complex factual assessments").

*Lost Tree Vill. Corp v. United States*, 115 Fed. Cl. 219, 228 (2014) (emphasis added).

42. Since the COVID-19 Closing Order, the Plaintiffs have not been permitted to use their Physical Locations to operate their businesses, nor have they been allowed to use their Tangible Property for any economically profitable use.

43. Shelby County Health Department along with the Shelby County Mayor, Lee Harris Ordered the Plaintiffs to cease operations at their businesses with less than 24 hours of notice. This is not nearly enough time to reconfigure a small business and to make arraignments for alternative measures. The Order has the effect of causing all of the Plaintiffs to completely lose their business permanently.

44. The COVID-19 Closure Order "…will remain in effect until further notice" and as a result, the Plaintiffs are deprived of the value of their Tangible Property and Physical Property while the Order is in effect. The Physical Locations of the Plaintiffs are not usable for any purpose, nor can these affected Physical Locations currently be bought, sold or leased, nor can the Plaintiff's Tangible Property be used to generate income while the Order is in effect.

45. The COVID-19 Closure Order is about to either entirely drain the Plaintiffs' Property of all economic value during its pendency or has already done so. In either event, the diminution of value and government interference caused by this Order is an unconstitutional taking without just compensation.

## II.  SUBSTANTIVE DUE PROCESS VIOLATION - 42 U.S.C. § 1983

COVID-19 Closure Order Deprives the Plaintiffs of Life, Liberty and /or Property without Due Process of Law in Violation of the Fourteenth Amendment

46. Plaintiffs hereby incorporate by reference the preceding paragraphs as though fully set forth herein.

47. The Plaintiffs have a protected liberty interest in their right to live without arbitrary governmental interference, and a protected fundamental property right to use and enjoy land in which they hold a recognized interest (such as a fee simple or as a leasehold). See *MFS, Inc. v. DiLazaro*, 771 F. Supp. 2d 382, 440-41 (E.D. Pa. 2011) (citing *DeBlassio v. Zoning Bd. Of Adjustment for Twp. Of W. Amwell*, 53 F.3d 592, 600 (3d Cir. 1995)); see also *Horne*, 576 U.S. 350, 135 S. Ct. at 2426.

48. The Supreme Court "…has emphasized time and again that 'the touchstone of due process is protection of the individual against arbitrary action of government[.]" *City of Sacramento v. Lewis*, 523 U.S. 833, 845 (1988) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).  The Court continued "The fault [may] lie in a denial of fundamental procedural fairness…or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" Id. At 845-846 (Citations omitted).

49. "Substantive due process prevents the government from engaging in conduct that 'shocks the conscience,'…or interferes with rights 'implicit in the concept of ordered liberty[.]'" *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952).

50. "[The] substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 522 U.S. at 847 (quotations omitted).

51. The COVID-19 Closure Order as set forth above, constitute capricious, irrational, arbitrary and abusive conduct which unlawfully interferes with the Plaintiffs' liberty and property interests protected by the due process clause of the Fourteenth Amendment to the United States Constitution.

52. The Defendants have acted under color of state law with the intent to unlawfully deprive the Plaintiffs of their liberty and property without substantive due process in violation of the Fourteenth Amendment to the United States Constitution.

53. The COVID-19 Closure Order impinges upon the Plaintiffs' use and enjoyment of their property and separately impinges upon the use of its Tangible Property. (See *DeBlasio*, 53 F. 3d at 601). The Shelby County Health Department along with the County Mayor have violated the Plaintiffs' substantive due process rights. See also *Nashville, C & St. L. Ry. V. Walters*, 294 U.S. 405, 415 (1935) (concluding that state's police power was "subject to the constitutional limitation that it may not be exerted arbitrarily or unreasonably," and that such was requiring a railroad to bear the expense associated with construction of a public road and moving train tracks accordingly).

54. The Defendants have arbitrarily, capriciously and irrationally "impinged upon the [Plaintiffs] use and enjoyment of [its] property [in Shelby County]" by, *inter alia,* requiring the Plaintiffs to shutdown indefinitely and to privately bear the burden for such publicly beneficial decisions, which are aimed at slowing the spread of the novel coronavirus. *See DeBlasio*, 53 F. 3d at 601.

55. The behavior of the Defendants "'shocks the conscience' and violates the 'decencies of civilized conduct.'" See *Lewis*, 523 U.S. 833, 846, 47 (citations omitted). "[It] does not comport with traditional ideas of fair play and decency" and therefore violates substantive due process. *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957).

56. The Defendants' intentional, willful and wanton conduct 'shocks the conscience' of all citizens, who fear unchecked government intrusion for arbitrary and capricious ends – even if such ends are not ill intentioned.

57. In depriving the Plaintiffs of their liberty and property interests without due process of law, the Defendants have acted intentionally, willfully, wantonly and with callous and reckless disregard for Plaintiffs' constitutional rights.

58. As a direct and proximate result of the COVID-19 Closure Order, the Plaintiffs have and will continue to sustain monetary damages including loss in the value of the Tangible Property and Physical Locations, lost revenues, profits, expenses, attorney fees, and other costs incurred.

## Prayer for Relief

WHEREFORE, PREMISES CONSIDERED, Plaintiffs would request that proper process be issued and served on Defendants requiring a timely answer and this Court award a Judgment against Defendants as follows:

1. For Compensatory damages in an adequate amount to compensate all of the Plaintiffs in this action, in an amount owed as just compensation for the regulatory taking of their Physical Location and Tangible Property;

2. For Compensatory damages in an adequate amount to compensate all of the Plaintiffs in this action for Defendants' violations of the Due Process Clause of the Fourteenth Amendment as the proof may show.

3. For a Declaratory Judgment declaring that the issuance and enforcement of the COVID-19 Closure Order is an unconstitutional taking without just compensation, under the Fifth and Fourteenth Amendment;

4. For a Permanent Injunction to prohibit Defendants from enforcing the COVID-19 Closure Order unless, and until, a mechanism is established to provide just compensation for the affected businesses of the Plaintiffs.

5. An award of costs and expenses, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, including discretionary costs, in this matter to be taxed to the Defendants.

6. For such other further and general relief as this Court deems appropriate and in the interests of justice.

Respectfully Submitted,

s/Randall N. Songstad
Randall N. Songstad
254 Court Avenue, Suite 505
Memphis, TN 38103
(901) 870-5500
randy@songstadlawfirm.com