**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| TJM 64, INC., T.J. MULLIGANS, INC., RAB MEMPHIS, LLC, HADLEY'S PUB, INC., TAVERN 018, INC., BREWSKI'S SPORTS BAR AND GRILLE, LLC, MURPHY'S PUBLIC HOUSE, INC., and CANVAS OF MEMPHIS, LLC,  )))))))<br><br>Plaintiffs,  ))<br><br>v.  ))<br><br>SHELBY COUNTY MAYOR, LEE HARRIS; SHELBY COUNTY HEALTH DEPARTMENT DIRECTOR, ALISA HAUSHALTER; and SHELBY COUNTY HEALTH OFFICER, BRUCE RANDOLPH  ))))))<br><br>Defendants.  )) | Case No. 2:20-cv-02498-JPM-tmp |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Before the Court is the Defendants' Motion to Dismiss, filed on August 3, 2020. (ECF No. 23.) Defendants move the Court pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the Complaint with prejudice. (ECF No. 23-1 at PageID 174.) Defendants argue that (1) Plaintiffs' substantive due process claim fails because they cannot show that Shelby County Health Department Health Directive 8 is unrelated to any legitimate purposes and (2) Plaintiffs' Takings claim fails because (a) the Shelby County Government engaged in a valid exercise of its police powers and (b) Defendants' alleged action was neither a physical nor a regulatory taking. (See generally id.)

Plaintiffs filed a Response on August 30, 2020. (ECF No. 25.) Plaintiffs concede that their Fourteenth Amendment substantive due process claim should be dismissed. (Id. at PageID 188.) Plaintiffs continue to assert their Fifth Amendment Takings Clause claim against the Defendants, arguing that Defendants' actions constitute (1) a categorical regulatory taking because Plaintiffs have alleged that there is no economically beneficial use left for their property or, in the alternative, (2) a non-categorical regulatory taking because the question of whether Plaintiffs' property has been taken for public use is a question of fact and cannot be decided at this stage of the proceedings. (See generally id.) Defendants filed a Reply on September 9, 2020, in which they provide additional authority in support of their arguments. (ECF No. 28 at PageID 198.)

For the reasons set forth below, Defendants' Motion to Dismiss is **GRANTED**.

## I.   BACKGROUND

This action was filed on July 13, 2020. (ECF No. 1.) Plaintiffs are the owners of several establishments licensed as limited service restaurants in Shelby County, Tennessee. (Id. ¶¶ 19–20.) On July 8, 2020, the Shelby County Health Department issued an order requiring all "Bars/Limited Service Restaurants and Clubs" to shut down for forty-five days because of a spike in COVID-19 cases in Shelby County, TN ("the Closure Order"). (Id. ¶¶ 15–16.) The Closure Order allowed all other businesses to remain open, except (1) "Bars/Limited Service Restaurants and Clubs," (2) "Adult Entertainment venues," (3) schools, and (4) "[f]estivals, fairs, parades, large scale sporting events, and large-scale community events." (Id. ¶ 17.) According to local regulation, a "Limited Service Restaurant" is a facility that "must not have total gross receipts of prepared foods in excess of 50% of their overall sales." (Id. ¶ 18.)

Plaintiffs assert two constitutional violations: (1) the Closure Order (also known as Shelby County Health Directive 8) violates the Takings Clause of the Fifth Amendment, as a regulatory taking; and (2) the Closure Order violates substantive due process under the Fourteenth Amendment.  (Id. at PageID 5, 10.)  Plaintiffs have conceded that their Fourteenth Amendment substantive due process claim should be dismissed, so Plaintiffs' only assertion still at issue is that the Closure Order violates the Takings Clause.  (ECF No. 25 at PageID 188.)  Plaintiffs assert that the Closure Order "prohibits *all* economically beneficial and profitable uses of the Plaintiffs' Tangible Property and Physical Location[,] [and that] [t]he entirety of the Plaintiffs' property rights have been extinguished."  (Id. ¶ 33.)  Plaintiffs assert that the Closure Order qualifies as a categorical taking under Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1019 (1992), and, alternatively, qualifies as a regulatory taking under the framework established by Penn Cent. Transp. Co. v. New York City, 438 U.S. 104 (1978).  (Id. ¶¶ 37–45.)

On July 29, 2020, this Court entered an Order Denying Plaintiffs' Application for Temporary Restraining Order ("TRO Order").  (ECF No. 22.)  In the TRO Order, the Court held that Plaintiffs "are unlikely to succeed on the merits of their constitutional claims and given the potential public health consequences of allowing Plaintiffs to continue to operate their business unfettered by [] public safety and health regulations, the issuance of a TRO preventing the enforcement of the Closure Order is not appropriate in this case."  (Id. at PageID 153.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion permits the

3

"defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993) (citing Nishiyama v. Dickson Cnty., 814 F.2d 277, 279 (6th Cir. 1987)). A motion to dismiss only tests whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases which would waste judicial resources and result in unnecessary discovery. Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides that the claim is not plausible, the case may be dismissed at the pleading stage. Iqbal, 556 U.S. at 679. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level." Ass'n of Cleveland Fire Fighters v. City of Cleveland, 502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 550 U.S. at 555). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A complaint need not contain detailed factual allegations. Twombly, 550 U.S. at 570. A plaintiff without facts who is "armed with nothing more than conclusions," however, cannot "unlock the doors of discovery." Iqbal, 556 U.S. at 678-79; Green v. Mut. of Omaha Ins. Co., No. 10-2487, 2011 WL 112735, at *3 (W.D. Tenn. Jan. 13, 2011), aff'd, 481 F. App'x 252 (6th Cir. 2012). A court "need not accept as true legal conclusions or unwarranted factual

4

inferences." Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 679. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

Assessing the facial sufficiency of a complaint ordinarily must be undertaken without resort to matters outside the pleadings. Wysocki v. Int'l Bus. Mach. Corp., 607 F.3d 1102, 1104 (6th Cir. 2010). "[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." Commercial Money Ctr., Inc. v. Illinois Union Ins. Co., 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); see also Koubriti v. Convertino, 593 F.3d 459, 463 n.1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." Commercial Money Ctr., 508 F.3d at 335–36. When evaluating a motion to dismiss, the Court may also take judicial notice of pertinent matters of public record, including bankruptcy filings. Signature Combs, Inc. v. United States, 253 F. Supp. 2d 1028, 1040 n.5 (W.D. Tenn. 2003).

### III.    ANALYSIS

The Fifth Amendment Takings Clause provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. "The purpose of forbidding uncompensated takings of private property for public use is 'to bar the Government from forcing some people alone to bear public burdens, which, in all fairness and justice, should be borne by the public as a whole.'" Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 277 (1986) (quoting Armstrong v. United States, 364 U.S. 40, 49 (1960)).

There are two recognized categories of takings: (1) physical takings and (2) regulatory takings. Waste Mgmt. v. Metro Gov't, 130 F.3d 731, 737 (6th Cir. 1997). Plaintiffs allege in their Complaint that the Closure Order was an unconstitutional regulatory taking of their property. (ECF No. 1 at PageID 5.) Defendants raise three arguments that Plaintiffs have failed to state a claim for relief for regulatory taking under the Takings Clause. (See generally ECF No. 23-1.) Defendants argue that the enactment of the Closure Order (1) was a valid exercise of the Shelby County Government's police powers and there is no taking for "public use" where the government acts pursuant to its police power; (2) was not a categorical regulatory taking because the Closure Order did not completely prohibit use of Plaintiffs' property; and (3) was not a non-categorical regulatory taking because the character of the government action here outweighs any economic impact the Plaintiffs face as a result of their businesses' closures. (Id. at PageID 170–74.)

A. *Defendants Acted Pursuant to Shelby County's Police Powers*

Defendants first argue that "there is no taking for 'public use' where the government acts pursuant to its police power." (ECF No. 23-1 at PageID 170.) Plaintiffs do not respond to this argument.

The Supreme Court has consistently stated that the Takings Clause does not require compensation when a government entity validly exercises its police powers. See Keystone Bituminous Coal Ass'n v. DeBenedictis, 480 U.S. 470, 491 (1987) ("'[A]ll property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community,' and the Takings Clause did not transform that principle to one that requires compensation whenever the State asserts its power to enforce it." (citations omitted)); Goldblatt v. Town of Hempstead, 369 U.S. 590, 592 (1962) ("If this ordinance is otherwise a

6

valid exercise of the town's police powers, the fact that it deprives the property of its most beneficial use does not render it unconstitutional."); Mugler, 123 U.S. at 668–69 (1887) ("A prohibition simply upon the use of property for purposes that are declared, by valid legislation, to be injurious to the health, morals, or safety of the community, cannot, in any just sense, be deemed a taking or an appropriation of property for the public benefit."); see also Support Working Animals, Inc. v. DeSantis, 457 F. Supp. 3d 1193, 1215 (N.D. Fla. 2020) (collecting cases) (finding that plaintiffs did not allege a compensable taking of their property where an amendment to the Florida Constitution prohibiting commercial dog racing in connection with wagering was a valid exercise of Florida's police powers).

Several circuit courts, including the Sixth Circuit, have also specifically held that actions the government performs pursuant to its police power, as compared to its power of eminent domain, cannot constitute a taking for "public use." See United States v. Droganes, 728 F.3d 580, 591 (6th Cir. 2013) (quoting Innovair Aviation, Ltd. v. United States, 632 F.3d 1336, 1341 (Fed. Cir. 2011)); Lech v. Jackson, 791 F. App'x 711, 715 (10th Cir. 2019) (citing Mugler v. Kansas, 123 U.S. 623, 668–69 (1887)); Zitter v. Petruccelli, 744 F. App'x 90, 93, 96 (3d Cir. 2018) (unpublished) (citing Bennis v. Michigan, 516 U.S. 442, 452 (1996)); AmeriSource Corp. v. United States, 525 F.3d 1149, 111150, 1153–54 (Fed. Cir. 2008) (citing Bennis, 516 U.S. at 443–44, 452–53)); Johnson v. Manitowoc Cty., 635 F.3d 331, 333–34, 336 (7th Cir. 2011) (citing Bennis, 516 U.S. at 452)). Although these cases primarily involved the seizure of property in criminal cases pursuant to the government's power to enforce laws, the Closure Order is no less a legitimate exercise of Defendants' police power than the seizure of property pursuant to criminal forfeiture laws. Hill v. Colorado, 530 U.S. 703, 715 (2000) (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 476 (1996) ("It is a

7

traditional exercise of the States' 'police powers to protect the health and safety of their citizens.'")).

The Court finds that because the Closure Order was a legitimate exercise of Defendants' police powers, it was not a taking for "public use" and therefore the Takings Clause does not require compensation. But assuming arguendo that the exercise of police powers in an effort to protect citizens' health and safety does not categorically prevent a finding that a government action was a taking for "public use," the Court will also analyze the sufficiency of Plaintiffs' claims under the traditional regulatory taking doctrines.

  B. *The Closure Order Was Not a Categorical Regulatory Taking*

A categorical regulatory taking occurs in "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 330 (2002) (emphasis in original) (quoting Lucas, 505 U.S. at 1017). "Anything less than a 'complete elimination of value,' or a 'total loss,' [] would require the kind of analysis applied in Penn Cent[.]" Tahoe-Sierra, 535 U.S. at 330 (quoting Lucas, 505 U.S. at 1019–20, n.8).

Plaintiffs fail to plausibly allege that the Closure Order took away all economically beneficial uses of their properties. The Closure Order at issue limited the use of their property to providing in-building services while their gross receipts for prepared food constituted less than 50% of their overall sales. Other business models remained available to them, including the option to provide curb-side, pick-up or delivery options, to become full-service restaurants, or to use the facilities for non-restaurant purposes. "A taking does not occur just because the owner is denied the highest and best use of the property." Loreto Dev. Co., Inc. v. Vill. of Chardon, 149 F.3d 1183 (Table), at *2 (6th Cir. 1998) (citing Goldblatt, 369 U.S. at

8

592).  Plaintiffs' decision not to pursue the available business alternatives "prevents them from demonstrating that they have suffered a total loss." TJM 64, Inc. v. Harris, 475 F. Supp. 3d 828, 838 (W.D. Tenn. 2020) (citing McCarthy v. Cuomo, No. 20-cv-2124 (ARR), 2020 WL 3286530, at *5 (E.D.N.Y. June 18, 2020)).

Plaintiffs argue that the Court must accept as true the allegation in the Complaint that the Closure Order has deprived them of any economically beneficial use of their property. (ECF No. 25 at PageID 186.)  But whether a regulation deprives the plaintiff of any economically beneficial use of his property is the critical legal issue in a categorical regulatory taking analysis; this allegation is therefore a legal conclusion couched as a factual allegation. Twombly, 550 U.S. at 555.  The Court does not have to accept as true legal conclusions asserted in the Complaint.  Plaintiffs have not provided sufficient *factual* allegations in the Complaint to support their assertion that the Closure Order deprived them of *any* economically beneficial use of their property.  The Court therefore finds that Plaintiffs fail to plausibly allege that the Closure Order constituted a categorical regulatory taking.

C. *The Closure Order Was Not a Regulatory Taking under the* Penn Cent. *Analysis*

Where a regulation does not deprive owners of *all* economically beneficial uses of their property, the Court must analyze whether there has been a regulatory taking under the Penn Cent. multi-factor analysis. See Tahoe-Sierra, 535 U.S. at 302.  Penn Cent. provided three factors for the Court to consider when determining whether a regulatory taking has occurred: "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the government action." Connolly, 475 U.S. at 224–25.

The Court finds that the first and second Penn Cent. factors weigh in favor of Plaintiffs. It can reasonably be inferred from the fact that Plaintiffs had to close their businesses for at least some period of time that the Closure Order had an economic impact on the Plaintiffs. And although Plaintiffs' businesses are highly regulated entities and their reasonable investment-backed expectations would include "the possibility of regulatory changes over the years," the Closure Order in light of the global pandemic is not the type of regulation that Plaintiffs could reasonably have expected when investing in their businesses. See TJM 64, 475 F. Supp. 3d at 838 (citing Elmsford Apartment Asssocs., LLC v. Cuomo, 469 F. Supp. 3d 148, 167 (S.D.N.Y. 2020) & Connolly, 475 U.S. at 227).

However, the third factor weighs overwhelmingly in favor of the Defendants. Even if the fact that this regulation is a legitimate exercise of the Shelby County Government's police powers is not on its own fatal to Plaintiffs' claim, it is undeniable that this exercise of police powers was intended to promote the common good in response to a global pandemic that impacted public safety and the economy across the country; the Closure Order was an effort to "adjust[] the benefits and burdens of economic life to promote the common good." Connolly, 475 U.S. at 225 (citations omitted). Courts have found that the character of a government action weighs against finding a taking where, as here, the government action "is a temporary exercise of the police power to protect the health and safety of the community[.]" Bimber's Delwood, Inc. v. James, --- F. Supp. 3d ----, 20-CV-1043S, 2020 WL 6158612, at *17 (W.D.N.Y. Oct. 21, 2020) (citing Connolly, 475 U.S. at 225); see also Tennessee Scrap Recyclers Ass'n v. Bredesen, 556 F.3d 442, 457 (6th Cir. 2009) (finding that a regulatory burden was not a taking where it was temporary and was passed for a legitimate public purpose); Luke's Catering Serv., LLC v. Cuomo, --- F. Supp. 3d ----, 20-CV-1086S, 2020 WL

5425008, at *12 (W.D.N.Y. Sept. 10, 2020) (citations omitted) (finding that a 50-person limit on non-essential gatherings due to the threat of COVID-19 did not constitute a taking on the basis that it was temporary and a negative restriction as compared to an affirmative exploitation, physical invasion or permanent appropriation of the plaintiffs' assets for the government's own use); Buffalo Teachers Fed'n v. Tobe, 464 F.3d 362, 375 (2d Cir. 2006) (citations omitted) (finding that a temporary wage freeze was not a taking on the basis that it was "a negative restriction rather than an affirmative exploitation by the state" and arose "from a public program that undoubtedly burdens the plaintiffs in order to promote the common good").

The Court finds that the Closure Order, as a valid exercise of Defendants' broad police powers, was not a taking; "Defendants' need to effectively and quickly respond to the COVID-19 pandemic by promulgating the [] Closure Order outweighs any other considerations warranting a finding that the Order amounts to a taking." TJM 64, 475 F. Supp. 3d at 840. "Where a state 'reasonably conclude[s] that 'the health, safety, morals, or general welfare' would be promoted by prohibiting particular contemplated uses of land,' the state is not required to provide just compensation to the citizens affected by the regulation." Id. at 839 (citing Penn Cent., 438 U.S. at 125).

### IV.   CONCLUSION

For each of the reasons set forth above, Defendants' Motion to Dismiss is **GRANTED**. And because both this case and Case No. 2:20-cv-02497-JTF-atc have been dismissed, the Joint Motion to Consolidate filed on July 15, 2020 (ECF No. 15) is hereby **DENIED AS MOOT**.

**SO ORDERED**, this 8th day of March, 2021.

          /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE